UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11845-RGS

UNITED STATES OF AMERICA

v.

939 SALEM STREET, LYNNFIELD, MASSACHUSETTS, and
2900 NW 25TH TERRACE, BOCA RATON, FLORIDA

MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION
TO STRIKE THE CLAIM OF ROBERT EREMIAN

August 19, 2011

STEARNS, D.J.

The United States, pursuant to the Fugitive Disentitlement Statute, 28 U.S.C. § 2466, moves to strike the claim of intervenor Robert Eremian to an interest in real property located at 2900 NW 25th Terrace in Boca Raton, Florida. The court heard oral argument on August 9, 2011. Eremian did not appear personally, but was represented at the hearing by counsel.

BACKGROUND

Eremian worked as a bookmaker in Boston for eleven years before relocating to the island of Antigua in the West Indies. While living in Massachusetts, Eremian owned a home in Lynnfield with his (now estranged) wife Lauren. He moved to Antigua with Lauren and their children in 1996 to work in a country with few if any

gambling restrictions. In Antigua, Eremian found employment in the "interactive gaming and interactive wagering" industry as a software consultant for Sports Off Shore (SOS).

In 1998, Eremian moved back to the United States with his family, who had been unable to adjust to life in Antigua. Eremian was indicted in Massachusetts in the summer of 2000 for gaming offenses. He eventually pled guilty, and was sentenced on October 8, 2002 to a term of probation by Judge Tauro. As part of his plea agreement with the United States, Eremian agreed to satisfy all of his outstanding federal tax obligations from 1996 to 2000, which he did. After completing his probation, Eremian returned to Antigua and resumed his prior employment in the gaming business. Eremian has since regularly filed his U.S. tax returns. On December 10, 2003, Eremian became a dual citizen of Antigua. He currently lives with an Antiguan citizen with whom he has a child.

On August 5, 2010, a federal grand jury sitting in Massachusetts returned a 442-count Superseding Indictment against Eremian and three co-defendants. The Indictment charges racketeering in violation of 18 U.S.C. § 1962; illegal gambling in violation of 18 U.S.C. § 1955; and money laundering in violation of 18 U.S.C. §§ 1956, 1957. Eremian is named personally in 355 counts of the Indictment, which also seeks forfeiture of any personal interest that he claims in the two captioned properties.

2

Eremian retained counsel in response to the new criminal charges, but has not returned to the United States from Antigua for his initial appearance. The government filed the motion to strike Eremian's claim on April 21, 2011. Eremian filed an opposition on June 1, 2011.

## DISCUSSION

In 2000, Congress codified the common-law equitable doctrine of fugitive disentitlement as part of the Civil Asset Forfeiture Reform Act (CAFRA), Pub. L. No. 106-185, § 14(a), 114 Stat. 202 (2000), codified as 28 U.S.C. § 2466. Congress's intent in enacting § 2466 was to provide the court with a means of responding to a defendant who "[attempts] to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004).

Section 2466(a), insofar as it applies to Eremian's case, has five requisite elements: "(1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the

United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant." *Collazos*, 368 F.3d at 198. "[M]ere notice or knowledge of an outstanding warrant, coupled with a refusal to enter the United States, does not satisfy the statute." *United States v. $6,976,934.65 Plus Interest*, 554 F.3d 123, 132 (D.C. Cir. 2009) (holding that defendant's renunciation of his U.S. citizenship by itself failed to establish that he was deliberately seeking to avoid extradition).

Eremian asserts a claim only as to his putative interest in the Boca Raton property, which he purchased with Lauren Eremian as tenants by the entirety on June 6, 2006. Eremian concedes all of the elements of the fugitive entitlement doctrine but one – whether he remains outside of the United States "in order to avoid criminal prosecution" – in other words, whether he meets the statutory definition of a fugitive from justice.

There is no First Circuit case interpreting the statute of which the court is aware. The Second Circuit's decision in *Collazos* is, however, instructive. There, the Court defined the term "fugitives" to include those who "learned that their arrests were sought and who then refused to return to the United States in order to avoid prosecution." *Collazos*, 368 F.3d at 199. Collazos, a Colombian national charged with operating an international money-laundering enterprise, sought to contest in absentia the in rem

4

forfeiture of a large amount of cash ($1.1 million) seized from a bank account that she owned in New York. Collazos argued that she could not be classified as a fugitive under the statute because she was not in the United States at the time the acts of money laundering were alleged to have occurred; indeed, she had not visited the United States since 1977. *Id.* at 196. The Second Circuit, under these facts, acknowledged that Collazos would not have been deemed a fugitive by the common law. Nor in light of the Supreme Court's holding in *Degen v. United States*, 517 U.S. 820, 823 (1996), could a court assert an inherent authority to impose the "harsh sanction of absolute disentitlement." The resulting "spectacle" "of a criminal defendant reposing [abroad], beyond the reach of our criminal courts, while at the same time mailing papers to the court in a related civil action and expecting them to be honored," *id.* at 828, is the quandary that § 2466 is intended to remedy.

In upholding the order of disentitlement in Collazos's case, the Second Circuit rejected arguments that the district court had abused its discretion and violated Collazos's due process rights by not first conducting a trial of the forfeiture case. As the Court noted, the delay in scheduling a forfeiture trial was solely the "product of Ms. Collazos's repeated failures to appear for deposition . . . ." and her "persistent refusal" to return to the United States for a hearing. *Collazos*, 368 F.3d at 201, 203. As the Second Circuit summarized,

> [s]pecifically, when persons, such as Ms. Collazos, refuse to enter the United States to face criminal charges, but simultaneously attempt to challenge related civil forfeitures by asserting innocent-owner defenses, the claimant's deliberate absence from the United States gives rise to a presumption that there is no merit to the innocent-ownership claim. Indeed, in many cases, certainly in Ms. Collazos's, the presumption is reinforced when the claimant's absence deprives the government of the opportunity to conduct a deposition, which itself supports an adverse inference as to the criminal source and use of the seized currency.

*Id.* at 203-204.

Here, it appears that the government has amassed significant circumstantial evidence that Eremian has willfully refused to enter the United States to vindicate any interest that he may have in the Boca Raton property and that the refusal is motivated by the desire to avoid criminal prosecution.[1] But given the incipiency of the forfeiture proceeding and the statement made at the hearing by Eremian's counsel that Eremian does intend to appear personally to prosecute the claim, the government is advised to give Eremian that opportunity by noticing a deposition. Should Eremian fail to appear without sufficient excuse, the court will be prepared to draw the same adverse inference that was drawn decisively in *Collazos*.

---

[1] A summary affidavit presented to the court by the government avers that between 2003 and 2009, when a search warrant was executed at Eremian's Lynnfield residence, he traveled to the United States at least 68 times. Lemanski Aff. ¶ 5 (Dkt. #32-1). Since the search and subsequent Indictment, Eremian has not returned to the United States, not even to attend his mother's funeral in May of 2011. *Id*.

6

ORDER

For the foregoing reasons, the motion to strike Eremian's claim is <u>DENIED</u> without prejudice.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE